IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                |   |                   |
|----------------|---|-------------------|
| UNITED STATES, | * |                   |
| Plaintiff,     | * |                   |
| v.             | * | Crim. No. L-09-098 |
| TRENELL MURPHY | * |                   |
| Defendant.     | * |                   |

**MEMORANDUM OPINION**

Following his indictment for possession with intent to distribute five kilograms or more of cocaine—a Schedule II controlled substance—Defendant, Trenell Murphy, filed a Motion to Suppress. The Court held a Motions Hearing on June 30, 2009 and, after hearing from each of the parties, denied Mr. Murphy's motion. This Memorandum memorializes the reasoning behind that decision.[1]

As narrowed by Counsel during the June 30 hearing, the sole issue to be decided is whether the police may conduct a warrantless search of an automobile when the automobile has been secured by the police but is suspected of having been used to transport narcotics and dispose of narcotics-related items. For the reasons stated below, the Court finds that, in this case, (i) the police's actions were in-line with the Constitution, and (ii) the results of the search should not be suppressed.

---

[1] Subsequent to the Court's ruling, Mr. Murphy pled guilty to Count One of the Indictment, which charged him with possession with intent to distribute five (5) or more kilograms of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841. The plea was entered pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure and Mr. Murphy preserved his right to appeal this denial.

**I.      Background**

During the fall of 2007, Baltimore City Police detectives received information from a confidential informant[2] that an individual known as "Chuck" was distributing large amounts of cocaine city-wide. The informant indicated that "Chuck's" base of operation was the west-side of Baltimore, and that "Chuck" resided with his mother in that area. The informant also told the detectives that "Chuck's" mother resided at 3041 Presstman Street. The detectives subsequently identified "Chuck" as Trenell D. Murphy. During the course of the police investigation, Murphy was seen going to and from the 3041 Presstman Street residence. At some point after gathering that information, the detectives working the case were transferred to the east-side of Baltimore and took no further steps with respect to Murphy at that time. When the detectives were transferred back to the west-side in early 2009, they renewed their focus on Murphy.

In the evening hours of February 19, 2009, detectives set up surveillance in the vicinity of 3041 Presstman Street. The detectives observed a black Chevrolet truck bearing MD registration number 88V422 parked alongside the Presstman Street home. A check of Motor Vehicle Administration records revealed that the truck was registered to Trenell David Murphy. During the course of their surveillance, detectives noticed Murphy exit the front door of 3041 Presstman Street and walk to a blue Honda Odyssey minivan parked in front of the house. According to MVA records, the Honda minivan is also registered to Murphy.

Later that evening, the detectives noticed a dark blue Honda Accord station wagon parked directly in front of 3041 Presstman Street. An unidentified African-American male

---

[2] At the June 30 hearing, the Court found that this informant was a "mere tipster" and was not an integral participant in the criminal activity. Accordingly, the identity of the informant need not be disclosed to the Defendant. See United States v. Price, 783 F.2d 1132, 1138 (4th Cir. 1986).

exited the car and entered the residence. Approximately one hour later, the same male and a second individual—later identified as Murphy—exited the house. Each was carrying a white plastic bag and each bag was tied off at the top and appeared to be full to its capacity. The first individual put his bag in the dark blue Honda station wagon and Murphy put the other bag into the bed of the Chevrolet truck. Each then separately drove his vehicle away from the house.

Detectives followed the black Chevrolet to the 1400 block of Ellamont Street where Murphy pulled to the curb, retrieved the white plastic bag from the bed of the truck, and discarded the bag into the gutter. Murphy then re-entered the truck and left the area. Almost immediately, detectives recovered the discarded bag and found it to contain (i) a razor blade with white residue, suspected to be cocaine, (ii) a Bicycle playing card with white residue, suspected to be cocaine, and (iii) numerous pages of newspaper—dated February 4th, 2009—with white powder residue, suspected to be cocaine. Each of those items is used in the distribution of cocaine. Further, the investigating detectives were able to recognize the white powder as cocaine through its texture and the unique aroma given off by it.

During the early hours of February 20, 2009, Maryland District Court Judge John Hargrove authorized a search warrant for 3041 Presstman Street. At approximately 1:45 a.m., the detectives executed the search warrant. After entering the house, Detective Ivo Louvado read Murphy his Miranda rights. Murphy verbally acknowledged that he understood his rights and told the police that he had U.S. currency in his room but that there were no narcotics in the house. Detective Craig Jester asked Murphy if he had any vehicles near or around the house. Murphy acknowledged that he had a Honda minivan parked in front of the house but denied having any other vehicles. Detective Jester then inquired about the black Chevrolet truck. Murphy denied knowledge of the truck several times.

3

During their search of the house, the detectives recovered $11,117.00 in U.S. currency, personal papers, and keys to the black Chevrolet truck. The detectives used the keys to demonstrate that the truck belonged to Murphy.[3] They did not, however, use the keys to access the truck. Although the truck bed was covered, the police were able to access it by rolling back the tonneau cover; it was not necessary to use the key. Upon accessing the pickup's bed, the police saw containers similar to the one Murphy had discarded earlier in the day. The detectives then searched the truck bed and recovered three large re-sealable foil containers as well as a partially-opened backpack containing cocaine residue and other narcotics related items (e.g. black rubber bladders).

The packages found in the pickup bed contained approximately forty-one kilograms of cocaine with an estimated wholesale value of roughly $1 million. After uncovering the cocaine, the police physically secured the items in the truck and applied for a search warrant for the vehicle. That search warrant was granted by Maryland District Court Judge Videtta Brown. Because the search of the truck bed occurred prior to the police obtaining this search warrant, however, the warrant cannot be used to justify that search. Thus, the sole question before the Court is whether the police were permitted to conduct a warrantless search of Murphy's Chevrolet pickup truck.

**II.     Analysis**

Typically, the police may search a vehicle or residence only after obtaining a search warrant. See United States v. Murphy, 552 F.3d 405, 410 (4th Cir. 2009). In certain limited cases, however, the police may conduct a warrantless search. Id. Two exceptions to the warrant

---

[3] The detectives did so by using a button on the keys to enable and disable the alarm system. Because the keys were not used to open the vehicle, the police's use of them was proper even though "keys" were not specifically listed in the search warrant.

requirement are applicable in this case.  First, under the "automobile exception," a warrantless search is permissible if a vehicle is "ready mobile" and probable cause exists to believe that it contains contraband or evidence of a crime.  See, e.g., Maryland v. Dyson, 527 U.S. 465, 466 (1999); United States v. White, 549 F.3d 946, 949 (4th Cir. 2008).  In this case, the Chevrolet truck remained fully operational and, as a result, was "ready mobile."  That the police had secured the vehicle is irrelevant to the analysis.  In addition, the police had probable cause to believe that it contained contraband or evidence of a crime.  Earlier that day, detectives had witnessed Murphy use the truck to dispose of drug paraphernalia and cocaine residue.  That, combined with the statements made by the police department's confidential informant, established probable cause that the truck contained either illegal drugs or evidence of narcotics distribution.  Accordingly, the police acted legally when conducting a warrantless search of Murphy's Chevrolet pickup.

Second, even if the automobile exception were inapplicable, the police may still conduct a warrantless search if they have probable cause to believe that a vehicle was an instrumentality of a crime.  See United States v. Dickey-Bey, 393 F.3d 449, 457 (4th Cir. 2004).  As previously detailed, the detectives in this case had probable cause to believe that Murphy's pickup was an instrumentality of a crime, namely transporting and distributing cocaine.

Furthermore, Murphy's denial of knowledge concerning the black Chevrolet further reinforces the police's probable cause to conduct a warrantless search.  See United States v. Moses, 540 F.3d 263, 269 (4th Cir. 2008).  In Moses, keys taken from a defendant fit the front door of an apartment used to store drugs and guns.  Id.  The Fourth Circuit has held that the defendant's "protestation that he had nothing to do with the unit" helped establish probable cause that the apartment contained contraband or evidence of a crime.  Id.  Similarly, Murphy's

repeated denials regarding the Chevrolet pickup—which the detectives knew belonged to him—further established that the police possessed the requisite probable cause to conduct a warrantless search of the vehicle.

### III.  Conclusion

For the foregoing reasons, as well as those stated in open court, the Court DENIES Defendant's Motion to Suppress.

Dated this 22nd day of July, 2009.

_____/s/_____
Benson Everett Legg
Chief Judge